# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

THE CITY OF MONROE, a Washington )
Municipal Corporation, )
           )
     Appellant, )
           )
     v. )
           )
WASHINGTON CAMPAIGN FOR )
LIBERTY, a Washington non-profit )
corporation, )
     Defendant, )
           )
SEEDS OF LIBERTY, an unknown )
entity, )
     Respondent, )
           )
VOTERSWANTMORE CHOICES.COM, )
an unknown entity; BANCAMS.COM, )
an unknown entity, )
           )
     Defendants. )

No. 68473-6-I

DIVISION ONE

UNPUBLISHED OPINION

FILED: February 25, 2013

GROSSE, J. — An initiative is beyond the scope of the local initiative power if it involves powers granted by the legislature to the governing body of a city, rather than the city itself. In RCW 46.63.170, the legislature granted to local legislative bodies, not the electorate, the exclusive power to legislate on the subject of the use and operation of automated traffic safety cameras. The subject matter of automated traffic safety cameras is therefore beyond the scope of the local initiative power. Section 3 of proposed Monroe Initiative No. 1, mandating that any ordinance authorizing the use of automated traffic safety cameras be put to an advisory vote, has as its subject matter automated traffic

safety cameras. Accordingly, Section 3 of proposed Monroe Initiative No. 1 is invalid as beyond the scope of the local initiative power. We reverse the trial court's order denying the city of Monroe's motion for summary judgment with regard to Section 3 and the order granting Seeds of Liberty's special motion to strike. We vacate the trial court's award of attorney fees, costs, and the statutory penalty to Seeds of Liberty.

## FACTS

In 2007, pursuant to authority granted by RCW 46.63.170, the city of Monroe (City) enacted an ordinance authorizing the use of automated traffic safety cameras within the City. The provisions regarding automated traffic safety cameras are codified at chapter 10.14 of the Monroe Municipal Code (MMC). The code defines an "automated traffic safety cameras" as:

> a device that uses a vehicle sensor installed to work in conjunction with an intersection traffic control system, a railroad grade crossing control system or a speed measuring device, and a camera synchronized to automatically record one or more sequenced photographs, microphotographs or electronic images of the rear of a motor vehicle at the time the vehicle fails to stop when facing a steady red traffic control signal or an activated railroad grade crossing control signal, or exceeds a speed limit in a school speed zone as detected by a speed measuring device.[1]

In January 2011, Respondent Seeds of Liberty and three other organizations commenced a petition for an initiative, Monroe Initiative No. 1, to repeal the automated traffic safety cameras ordinance, impose voting and approval requirements for any future use by the City of traffic cameras, limit the

---

[1] MMC 10.14.020(D).

2

amount of fees for traffic camera infractions, and require an advisory vote on the use of traffic cameras.[2] The proposed initiative reads as follows:

BE IT ENACTED BY THE PEOPLE OF THE CITY OF MONROE:

Section 1.  New Chapter 10.14.  A new chapter 10.14 is hereby added to the Monroe Municipal Code to read as follows:

10.14.110 Automatic Ticketing Cameras:  The City of Monroe and for-profit companies contracted by the City of Monroe may not install or use automatic ticketing cameras to impose fines from camera surveillance unless such a system is approved by a two-thirds vote of the City Council and a majority vote of the people at an election.

1. For the purposes of this chapter, "automatic ticketing cameras" means a device that uses a vehicle sensor installed to work in conjunction with an intersection traffic control system, or a speed measuring device, and a camera synchronized to automatically record one or more sequenced photographs, microphotographs, or electronic images of the rear of a motor vehicle at the time the vehicle fails to stop when facing a steady red traffic control signal, or exceeds a speed limit as detected by a speed measuring device.

10.14.120 Fines:  [I]f two-thirds of the City Council and a majority of Monroe voters at an election approve a system of automatic ticketing cameras to impose fines from camera surveillance, the fine for infractions committed shall be a monetary penalty of no more than the least expensive parking ticket imposed by law enforcement in the city limits of Monroe.

Section 2.  Chapter 10.14 (Ordinance No. 002/2007 allowing automatic ticketing cameras) is hereby repealed.

Section 3. Advisory Vote:  Any ordinance that authorizes the use of automatic ticketing cameras enacted after January 1, 2007, must be put on the ballot as an advisory vote of the people at the next general election.

Section 4. Severability:  If any provision of this act or its application to any person or circumstance is held invalid, the remainder of the

---

[2] The other sponsors of the initiative are BanCams.com, Washington Campaign for Liberty, and VotersWantMoreChoices.com.

act or the application of the provision to other persons or circumstances is not affected.

In June 2011, the Snohomish County Auditor certified the sufficiency of the petition. A few days later, the Monroe City Council passed a resolution finding that Monroe Initiative No. 1 was invalid because it exceeded the scope of the local initiative power under state law. In the resolution, the Council directed that the City take no action to include the proposed initiative on any ballot in 2011 and authorized the Mayor to file a declaratory judgment action as to the validity of the proposed initiative.

In July 2011, the City filed a complaint for declaratory relief against Seeds of Liberty and the other sponsors of Monroe Initiative No. 1. The City sought a declaration that the initiative, "in its entirety, is invalid because it is beyond the scope of the local initiative power, and therefore null and void."

In August 2011, the City moved for summary judgment. The following month, Seeds of Liberty filed an opposition to the City's motion for summary judgment and also filed a special motion to strike the City's complaint under RCW 4.24.525, the anti-SLAPP statute.[3]

By order entered February 13, 2012, the trial court granted the City's motion for summary judgment with regard to Sections 1 and 2 of the proposed initiative and denied the motion with regard to Section 3. The court also granted Seeds of Liberty's special motion to strike with regard to Section 3 and awarded

---

[3] "SLAPP" stands for Strategic Lawsuits Against Public Participation. Of the four sponsors of Monroe Initiative No. 1, only Seeds of Liberty is a party to this appeal.

Seeds of Liberty attorney fees and the penalty provided for in the anti-SLAPP statute. The City appeals.

## ANALYSIS

### Scope of Local Initiative Power

Whether an initiative is beyond the scope of local initiative power is a question of law that we review de novo.[4] "An initiative is beyond the scope of the initiative power if the initiative involves powers granted by the legislature to the governing body of a city, rather than the city itself."[5] A grant of power to the governing body of a city means a grant exclusively to the mayor and city council, not the electorate.[6] "Where the legislature enacts a general law that grants such authority to the legislative body of a city, the exercise of that authority by the legislative body is not 'subject to repeal, amendment or modification by the people through the initiative or referendum procedure.'"[7] To determine whether the legislature granted authority to the legislative body of a city, we look to the language of the relevant statute.[8]

Applying the foregoing principles, the courts in both Mukilteo Citizens for Simple Government v. City of Mukilteo[9] and American Traffic Solutions, Inc. v.

---

[4] City of Port Angeles v. Our Water-Our Choice!, 170 Wn.2d 1, 7, 239 P.3d 589 (2010).
[5] City of Sequim v. Malkasian, 157 Wn.2d 251, 261, 138 P.3d 943 (2006).
[6] Malkasian, 157 Wn.2d at 265.
[7] American Traffic Solutions, Inc. v. City of Bellingham, 163 Wn. App. 427, 433, 260 P.3d 245 (2011) (quoting State ex rel. Guthrie v. City of Richland, 80 Wn.2d 382, 384, 494 P.2d 990 (1972)), review denied, 173 Wn.2d 1029 (2012).
[8] American Traffic Solutions, 163 Wn. App. at 433.
[9] 174 Wn.2d 41, 272 P.3d 227 (2012).

<u>City of Bellingham</u>[10] considered whether the subject of automated traffic safety cameras is beyond the scope of local initiative power. In both cases, the courts concluded that RCW 46.63.170, by its grant of authority to the "appropriate local legislative authority" with regard to the use and operation of automated traffic safety cameras, granted authority to the local legislative body.[11] Accordingly, in both cases, the courts held that the subject matter of automated traffic safety cameras is beyond the scope of the local initiative power and that the initiatives at issue were therefore invalid.

The initiative measure held invalid in <u>Mukilteo Citizens</u> is virtually identical to Monroe Initiative No. 1 in all respects, including the inclusion in both initiatives of a provision calling for an advisory vote.[12] We agree with the City that <u>Mukilteo Citizens</u> is dispositive of the issues presented here. We disagree with Seeds of Liberty's argument that the case is not dispositive because the court in <u>Mukilteo Citzens</u> did not sever the section of the initiative mandating an advisory vote and specifically address the validity of that section apart from the other sections of the initiative. In both <u>Mukilteo Citizens</u> and <u>American Traffic Solutions</u>, the courts held that the <u>subject matter</u> of automated traffic cameras is beyond the scope of

---

[10] 163 Wn. App. 427.

[11] <u>Mukilteo Citizens</u>, 174 Wn.2d at 52 (noting further that "[t]he legislature's grant of authority does not extend to the electorate"); <u>American Traffic Solutions</u>, 163 Wn. App. at 434 ("'It is well-settled that in the context of statutory interpretation, a grant of power to a city's governing body ("legislative authority" or "legislative body") means exclusively the mayor and city council and not the electorate.'") (quoting <u>Malkasian</u>, 157 Wn.2d at 265).

[12] In a few places, the Mukilteo initiative uses the term "automated ticketing machines" where the proposed Monroe initiative uses the term "automated ticketing cameras." But, the definition of "automated ticketing machine" in the Mukilteo initiative is identical to the definition of "automated ticketing camera" in the proposed Monroe initiative.

the local initiative power and that the exercise of a legislative body's authority with respect to that subject matter is not subject to repeal, amendment, or modification by local initiative. The subject matter of Section 3 of Monroe Initiative No. 1, mandating an advisory vote on any ordinance authorizing the use of automated traffic safety cameras, is automated traffic safety cameras. Section 3 modifies the legislative body's authority with regard to automated traffic safety cameras by requiring that any ordinance on the subject be put to an advisory vote. Section 3 is therefore beyond the scope of the local initiative power.[13]

Anti-SLAPP Sanctions

A party bringing a special motion to strike a claim under the anti-SLAPP statute has the burden of showing by a preponderance of the evidence that the claim is based on an "action involving public participation and petition," as that term is defined in the statute.[14] "If the moving party meets this burden, the burden shifts to the responding party to establish by clear and convincing evidence a probability of prevailing on the claim."[15] Assuming, without deciding, that the trial court was correct in concluding that the City's declaratory judgment action was an action involving public participation and petition, the City met this burden based on the case law establishing that the subject matter of automated traffic safety cameras is beyond the scope of the local initiative power. The trial court erred as a matter of law in granting Seeds of Liberty's special motion to

---

[13] Because we conclude that Section 3 is invalid as beyond the scope of the local initiative power, we need not and do not reach the City's argument that Section 3 is invalid because it would compel the City to perform an administrative act.

[14] RCW 4.24.525(4)(b). The term "action involving public participation and petition" is defined at RCW 4.24.525(2).

[15] RCW 4.24.525(4)(b).

strike and awarding it attorney fees, costs, and the statutory penalty. We vacate that award.

We reverse the trial court's order denying the City's motion for summary judgment with regard to Section 3 of proposed Monroe Initiative No. 1 and the order granting Seeds of Liberty's special motion to strike. We vacate the award of attorney fees, costs, and the statutory penalty to Seeds of Liberty.

WE CONCUR:

<u>The City of Monroe v. Seeds of Liberty</u>
No. 68473-6-I

DWYER, J. (concurring) — Keeping in mind the concerns expressed in <u>Eyman v. McGehee</u>, No. 67908-2-I (Dwyer, J. concurring and dissenting), I concur in the majority's resolution of this matter.

_____